IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| TRAVIS BLANK, | § | |
| | § | |
| *Plaintiff*, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 4:20-CV-00096-A |
| | § | |
| UNITED STATES OF AMERICA, | § | |
| AMINIA BARUTI, M.D., | § | |
| and CHARLES EILERT, D.O., | § | |
| | § | |
| *Defendants*. | § | |

## PLAINTIFF TRAVIS BLANK'S FIRST AMENDED COMPLAINT

Plaintiff Travis Blank, by and through his counsel, files this First Amended Complaint against Defendants United States of America, Aminia Baruti, M.D., and Charles Eilert, D.O. (collectively "defendants"):

## I.    INTRODUCTION

1.    This is a civil action seeking damages against defendants Aminia Baruti and Charles Eilert for committing acts which violated Mr. Blank's rights under the United States Constitution. As more fully set forth below, defendants Baruti and Eilert repeatedly acted with deliberate and conscious indifference to Mr. Blank's serious medical conditions and needs, and deprived Mr. Blank of his rights as guaranteed by the Eighth Amendment to the Constitution of the United States. Defendant Baruti also violated Mr. Blank's First Amendment rights by retaliating against him for filing a previous lawsuit against her (which settled favorably for Mr. Blank) in connection with issues outside the scope of this complaint.

2.      This action also asserts Federal Tort Claims Act ("FTCA") claims against defendant United States of America for negligence, gross negligence, and intentional infliction of emotional distress in connection with the provision (or lack thereof) of Mr. Blank's medical care while incarcerated with the Federal Bureau of Prisons ("BOP"). BOP employees repeatedly failed to conform to the applicable standard of medical care, causing Mr. Blank significant and unnecessary pain and suffering.

## II.    PARTIES

3.      Plaintiff Travis Blank is a Texas resident. From February 22, 2012, to July 11, 2020, Mr. Blank was incarcerated with the Federal Bureau of Prisons at the Federal Medical Center located at 3150 Horton Road, Fort Worth, Texas 76119 ("FMC"). Mr. Blank's present mailing address is 5200 Marina Drive, Denton, Texas 76208.

4.      The United States of America is the appropriate defendant for claims pursuant to the FTCA and has appeared through counsel.

5.      Defendant Aminia Baruti, M.D., is a physician at FMC. She is and has been, at all relevant times, employed by BOP and an agent of the United States of America. On information and belief, Baruti was responsible for caring for Mr. Blank's medical needs from February 22, 2012 to July 11, 2019. On information and belief, Baruti is a citizen of Texas and was served in this matter on March 3, 2020.

6.      Defendant Charles Eilert, D.O., is a physician at FMC. He is and has been, at all relevant times, employed by BOP and is an agent of the United States of America. On information and belief, Eilert was also responsible for caring for Mr. Blank's medical needs from October 2018 until July 2019. On information and belief, Eilert is a citizen of Texas and was served in this matter March 3, 2020.

## III.    JURISDICTION AND VENUE

7.    This action alleges claims against Baruti and Eilert under *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971), for damages for violations of Mr. Blank's constitutional rights. This Court has jurisdiction pursuant to 28 U.S.C. § 1331.

8.    This action also asserts FTCA claims against the United States of America for negligence, gross negligence, and intentional infliction of emotional distress. This Court has jurisdiction pursuant to 28 U.S.C. § 1346(b).

9.    This action also asserts a declaratory judgment claim, for which this Court has supplemental jurisdiction pursuant to 28 U.S.C. § 1367.

10.    Mr. Blank duly submitted his administrative claims on January 15, 2019, to which the government failed to respond within six months. Mr. Blank timely filed this action.

11.    Venue is proper under 28 U.S.C. § 1391(b). The individual defendants are subject to personal jurisdiction in this judicial district because they are residents of the State of Texas. Moreover, all of the events giving rise to the claims asserted herein occurred in the Northern District of Texas.

## IV.    BACKGROUND

12.    Plaintiff Travis Blank was incarcerated at FMC from February 2012 to July 2019. At this facility, Mr. Blank was supposed to receive care from BOP employees to treat various health issues that necessitated constant medical evaluation. Such issues include: Crohn's disease, two flattened discs in his lower back, kidney disease, and neck/spinal cord complications that required fusion surgery. The spinal cord issues also caused severe neck spasms that increased during his time at FMC.

       **a. Failure to Provide Mr. Blank with Necessary and Adequate Medical Treatment - Actions by Dr. Aminia Baruti**

13.     During the majority of Mr. Blank's incarceration, Baruti was his primary physician. To treat the worsening pain associated with his neck and back, Baruti began prescribing Mr. Blank pain medication in 2013. This was originally Percocet at a low dose. But over time, the strength and dosage of pain medication was elevated to Morphine 60mg as Mr. Blank's pain became chronic and extremely severe.

14.     Due to his medical conditions, Baruti also prescribed Mr. Blank a medical mattress and pillow. The mattress and pillow were neurologist recommended and the mattress could be used on only a bottom bunk.

15.     In January 2017, Baruti, without consultation with Mr. Blank's GI doctor, decided to remove his pain medication to attempt to alleviate constipation. Baruti assured Mr. Blank that she and the medical team would re-prescribe the pain medication if removal did not alleviate his constipation (*i.e.*, if the pain medication was not the cause of the constipation).

16.     Within days of Mr. Blank's stopping the pain medication, it was clear that: 1) the pain medication was not the cause of the constipation, and 2) without the pain medication, Mr. Blank was suffering excruciating and unbearable pain.

17.     This intense pain caused Mr. Blank to have severe headaches accompanied by nausea, spasms (which greatly affected his daily actions), and almost complete inability to sleep through the night. Mr. Blank's pain also exasperated his other ailments. Specifically, his Crohn's disease became harder to treat and manage.

18.     Immediately, Mr. Blank began to implore his medical providers at FMC to re-prescribe his pain medication. He complained to the FMC medical team of his pain and pain treatment on the following dates in early 2017: January 23 (sick call), February 14 (sick call), February 22

(HSA open house), March 16 (sick call), March 17 (sick call), and April 6 (sick call). Nothing was done to address Mr. Blank's severe pain. According to BOP policy, after attending three straight sick calls without having the medical issue resolved, Mr. Blank was supposed to see Baruti.

19.     Not until April 24, 2017, at Mr. Blank's bi-annual chronic care appointment, was he finally able to speak with Baruti. At this appointment, Baruti told Mr. Blank "you should be on some sort of pain pill."  Despite this knowledge, Baruti waited an additional two days to prescribe anything at all.

20.     Specifically, two days later, Baruti prescribed Mr. Blank Oxycontin 10mg. Oxycontin 10mg is a much lower dosage, and much weaker, than the Morphine 60mg that Baruti had previously prescribed. Unsurprisingly, the Oxycontin 10mg did nothing to alleviate the pain, and again, Mr. Blank complained to and sought help from the FMC medical team. Further, Baruti was aware that Mr. Blank's condition had not improved because she sent Mr. Blank to an offsite doctor to examine his neck injuries on March 13, 2017.

21.     Between April 26, 2017, and August 23, 2017, Mr. Blank complained to BOP employees about his pain and pain treatment on the following occasions: May 12 (sick call), May 30 (sick call), June 10 (sick call), July 25 (call-out with physician's assistant), August 9 (email to Baruti), and August 22 (sick call). This included an email directly to Baruti on August 9, 2017, to which she responded that she would schedule a visit, but refused to do so.

22.     On August 23, 2017, in a case styled *Blank v. United States et al.*, No: 4:17-cv-609, Baruti was served in a federal lawsuit under *Bivens* and the FTCA (4:17-CV-609-A) brought by Mr. Blank regarding matters unrelated to this complaint (the "First Lawsuit"). The First Lawsuit was resolved through a favorable settlement for Mr. Blank.

23.    Immediately following the filing of the First Lawsuit, Baruti's care for Mr. Blank sunk below her typical level of being deliberately indifferent—to a new normal of outright vindictiveness. After the First Lawsuit was filed, and until September 26, 2017, Mr. Blank complained of his severe and chronic pain three more times: twice at sick call (September 11 and September 22) and once through an email to Baruti (September 21). Again, nothing was done.

24.    On September 26, 2017, Mr. Blank went to sick call to reiterate the need for an effective treatment for his severe and chronic pain. At this sick call, Mr. Blank saw Ms. Been, a physician's assistant. Ms. Been not only failed to address Mr. Blank's pain, but she inexplicably discontinued his prescription for all pain medication. Ms. Been's terminating all Mr. Blank's pain medication required the express authorization via signature of Mr. Blank's primary physician, Baruti.

25.    Thus, after the First Lawsuit was filed, Baruti took Mr. Blank completely off pain medication despite prescribing pain medication for four years—including Morphine, at a high dose, for over a year. Also Baruti, just five months before, had prescribed Mr. Blank Oxycontin 10mg. Throughout this time, Baruti was aware Mr. Blank was suffering from severe and chronic pain.

26.    Without any pain medication, Mr. Blank was in excruciating pain constantly. Such pain caused Mr. Blank to have: constant headaches, severe nausea, dizziness, inability to sleep for more than two hours consecutively, tremors in his right arm, and weakness and numbness in his right arm.

27.    On October 23, 2017—the first time Mr. Blank saw Baruti following the filing of the First Lawsuit—Mr. Blank had a bi-annual chronic care appointment. It is important to remember the following indisputable facts that Baruti was working with at this visit:

- Baruti had prescribed Mr. Blank pain medication (and increased its strength and dosage) for four years. This included biannually diagnosing Mr. Blank's severe pain at his chronic care appointments;

- Baruti was aware that a neurologist had diagnosed Mr. Blank with severe neck spasms due to spinal cord compression;

- Baruti was aware that an orthopedic doctor had diagnosed Mr. Blank with "significant nerve damage" and "one flattened disc and another partially flattened disc in his lower back;" and

- Baruti was aware that (1) Mr. Blank had also seen a GI doctor for his Crohn's disease, and (2) the GI doctor recommended that Mr. Blank be placed on pain medicine, because his pain was so severe it was causing stress and could adversely affect his Crohn's disease.

28.     During this visit, Mr. Blank asked Baruti about his pain medication being removed by Ms. Been—and subsequently authorized by Baruti—at the sick call on September 26, 2017. In response, Baruti outright lied and stated she had no control over his pain medication, and that it must go through a pain management physician. Baruti made this statement despite the fact that Baruti herself (1) had solely, and without consultation with a pain management physician, prescribed Mr. Blank pain medication for over four years, and (2) had just authorized that Mr. Blank be taken off all pain medication. Further, after this appointment, Baruti wrote the subsequent consult order to pain management for only neck injections—not pain medication—completely blocking Mr. Blank's ability to obtain a recommendation for pain medication.

29.     To address Mr. Blank's pain, Baruti suggested he see a psychologist.

30.     Baruti was aware of Mr. Blank's pain—this fact cannot be disputed, as she prescribed him Morphine for several years. But after the First Lawsuit, she chose to ignore it and refused to reasonable or adequately address this serious medical issue, forcing Mr. Blank to suffer unnecessarily.

31.     On January 2, 2018, Mr. Blank filed an administrative remedy claim against Baruti. In this claim, Mr. Blank specifically raised the issue of Baruti's vindictive actions and conflict of interest due to the First Lawsuit. Nothing was done to address this conflict of interest. And Mr. Blank continued to go without any pain medication to treat ailments that would necessitate a major surgery.

32.     Following the First Lawsuit, Baruti scarcely maintained any sense of impartiality, committing vengeful actions that directly revealed her intent to not only provide deliberately indifferent care, but to punish Mr. Blank. This included:

- refusing to prescribe Mr. Blank any pain medication at all, despite previously prescribing Morphine for several years;

- telling nurses Mr. Blank did not need to lie down during a painful infusion treatment for Crohn's disease, despite the fact that Baruti herself had ordered that Mr. Blank lie down for the previous six years for these exact treatments;

- refusing to schedule a neurosurgeon appointment for over a year despite a recommendation by a separate doctor stating Mr. Blank needed to see a neurosurgeon; and

- changing Mr. Blank's chronic care appointments from bi-annual to annual, despite the fact that Mr. Blank had complicated medical conditions. This also caused his six-month prescriptions to expire.

33.     Baruti also committed two additional actions that revealed her intent to cause harm to Mr. Blank.

34.     In September 2017, Baruti removed Mr. Blank's lower bunk pass, without any consultation or medical reasoning. This placed Mr. Blank's health and well-being in peril due to his Crohn's disease. Mr. Blank must use the restroom frequently and expeditiously throughout the day and night (sometimes up to 10-12 times per day). Being on the top bunk obviously hindered his

ability to reach the toilet. Also, without a lower bunk pass, Mr. Blank could not have his—prescribed by Baruti—medical mattress. Due to the severity of Mr. Blank's neck condition and spasms, a bottom bunk was further necessary. Baruti's intent was evident in the fact that she never mentioned this to Mr. Blank in his October 23, 2017 chronic care appointment, despite the fact she had revoked the lower bunk pass weeks earlier.

35.    The second event occurred on March 13, 2018, when Baruti filed an incident report against Mr. Blank alleging he lied in an email to Baruti about her refusal to address his pain. If found culpable, Mr. Blank would have faced an extended prison sentence. Baruti's malicious incident report was so meritless that a lieutenant at the prison dismissed it.

36.    Between September 26, 2017, and October 11, 2018, Mr. Blank complained of his severe and chronic pain to medical officials at FMC **ten** times, including sending emails to HSAs, Baruti, and the clinical director, Dr. Hyder.

37.    Nothing was done to place Mr. Blank back on pain medication or otherwise address his concerns about his pain or Baruti's impartiality. This is the case despite other doctors continuously finding that he was suffering from severe physical injuries.

38.    From September 2017 to July 2019, Mr. Blank filed five administrative remedy claims and sent numerous emails to HSAs. None of these avenues were successful in improving his care.

39.    For 593 days, Mr. Blank was forced to suffer excruciating and unnecessary pain without any pain medication or treatment. This happened despite the fact that Baruti had previously prescribed Mr. Blank strong pain medication for four years and was aware his pain was worsening due to his deteriorating neck and back issues. For 235 days, Mr. Blank was prescribed a deliberately low pain medication for his various ailments. This happened despite the fact that Baruti had

prescribed Mr. Blank a much higher dosage for four years and knew that a much higher dosage was necessary and adequate.

### b. Failure to Provide Mr. Blank with Necessary and Adequate Medical Treatment - Actions by Charles Eilert

40.     For approximately three years, from May 29, 2013 until May 12, 2016, Eilert saw Mr. Blank occasionally for medical appointments, during which Mr. Blank explained to Eilert his severe and chronic pain. Eilert issued Morphine prescriptions for Mr. Blank on multiple occasions when Mr. Blank could not see Baruti. Specifically, Eilert prescribed oxycodone (10mg) for Mr. Blank's pain in May 2013. Eilert then determined that Mr. Blank needed between 40mg and 60mg of Morphine for his severe pain from 2013 until he briefly stopped seeing Mr. Blank in 2016.

41.     On October 11, 2018, Mr. Blank had another medical appointment with Eilert concerning his severe and chronic neck and back pain. The appointment was rushed and brief, lasting approximately ten minutes. Mr. Blank explained to Eilert his severe neck and back pain, spasms, severe headaches with nausea, weakened arm strength, and inability to sleep through the night. During this appointment, Mr. Blank also explained to Eilert that Baruti previously prescribed, for nearly four years, narcotic pain medication for his chronic pain. Mr. Blank explained to Eilert that, as reflected in Mr. Blank's medical file, his pain had worsened since Baruti initially prescribed narcotic pain medication.

42.     But Eilert refused to prescribe any medication whatsoever for Mr. Blank's intense pain. Eilert dismissed Mr. Blank's request for necessary and adequate pain medication and told Mr. Blank that only the pain management doctor, and not Eilert, can prescribe pain medicine.

43.     On information and belief, this statement made by Eilert was false, yet Eilert often said this to inmates so that their pain was never addressed. Eilert told Mr. Blank he would refer him to be evaluated for pain medication. But Eilert wrote the pain management consult order the

same way as Baruti—for neck injections—completely blocking Mr. Blank's ability to receive adequate pain treatment.

44.     On October 18, and November 1, 2018, Mr. Blank emailed Eilert requesting treatment for his severe pain discussed at his appointment. Eilert never responded to either communication for assistance.

45.     On November 15, 2018, Baruti sent Mr. Blank to a neurosurgeon, Dr. Thomas, who refused to see Mr. Blank because prison personnel failed to provide the neurosurgeon with Mr. Blank's MRI film. It was medical personnel's responsibility to provide the MRI film. The neurosurgeon told Mr. Blank to reschedule. The next day, Mr. Blank emailed Eilert to request a new neurologist appointment promptly in light of his excruciating pain. Eilert did not respond or order an expedited appointment.

46.     On December 12, 2018, Barry Hellar, who works for the health information management department and conducts HSA open houses, told Mr. Blank that Eilert could prescribe the pain medication and that Mr. Blank should be on pain medication.

47.     On December 14, 2018, Mr. Blank went to a sick call in another effort to obtain necessary and adequate medication for his severe, chronic pain. Mr. Blank saw both Eilert and Ms. Been, the physician's assistant. Mr. Blank again described his symptoms. Eilert again declined to prescribe a narcotic pain medication. Instead, Eilert nonsensically would prescribe only a seizure medication that was not FDA-approved to treat pain, called Oxycarbenzaprine.

48.     This inappropriately prescribed medication caused Mr. Blank to gain 13 pounds and significantly impaired his ability to think clearly, but it did not alleviate his severe pain. Mr. Blank notified Eilert of the Oxycarbenzaprine side effects and inefficacy on January 6, 2019 via email. Eilert did not change the prescription until February 8, 2019, at which time he prescribed

only 5mg of Oxycodone. This low dose did not adequately address Mr. Blank's intense pain. Eilert refused to increase the dosage, dismissing Mr. Blank's multiple pleas for him to do so to alleviate his severe chronic pain.

49.    Eilert refused to ensure Mr. Blank was able to see the neurosurgeon until January 22, 2019, at which time the neurosurgeon determined that Mr. Blank needed a spinal fusion surgery as soon as possible. This was 10 months after Baruti determined that Mr. Blank needed to see a neurosurgeon, during which time Mr. Blank was forced to wait and endure excruciating pain without necessary treatment. Mr. Blank then asked Eilert to expedite the surgery because he was in so much pain, and Eilert ignored his request. Mr. Blank finally had spinal surgery on May 1, 2019, when neurosurgeon Dr. Gregory Smith ordered narcotic pain medication (specifically, Codeine, 30mg, three times per day). But Eilert refused to follow the order and prescribe it for another 24 hours, knowingly leaving Mr. Blank in excruciating and unnecessary pain after having just had spinal fusion surgery.

### c.    Untreated Infection

50.    On May 12, 2017, Mr. Blank went to sick call to inform medical staff that the right side of his chest hurt, was bright red and burning, and he was having trouble raising his arm. Even with Mr. Blank's known weakened and compromised immune system—due to the medication he receives to treat his Crohn's disease—Mr. Blank was told by a BOP employee, it was "probably some type of insect bite, you will be okay." Despite this, the BOP employee prescribed Mr. Blank an antibiotic to treat infections without completing any type of lab work.

51.    The next day, at morning pill-line, Mr. Blank complained to a BOP employee that his chest pain and symptoms had worsened overnight, the burning had increased, and the infected

areas was turning a brighter red color. Mr. Blank even showed the affected area to them, and was simply told, "apply a warm towel and raise it up and out."

52.     That same day, at afternoon pill-line, Mr. Blank again complained to a BOP employee that: the severity of his chest pain and symptoms was increasing, the affected area was growing, becoming redder and burning more, and becoming significantly more painful. Again, Mr. Blank showed the affected area to them, but nothing was said or done.

53.     On May 14, 2017, at morning pill-line, Mr. Blank informed a BOP employee that he was unable to lift his arm and had severe chest pain. Also, he showed them that the infected area was a brighter red, and the burning had increased. Up to this point, no BOP employee had made any effort to further evaluate Mr. Blank's condition or bring in a physician.

54.     The next day, Mr. Blank went to sick call and informed the medical staff of his worsening condition. The pain had become so severe he could barely function and the infected area was much larger. At this point, Mr. Blank could not move his right arm. He was finally sent to JPS hospital, where he would remain for seven days. At JPS, Mr. Blank was diagnosed with an abscess and cellulitis.

55.     During his hospital stay, Mr. Blank was operated on three times. This included cutting his chest open three times because the infection was so deep. The doctors were shocked to hear that the incident happened on a Thursday evening, and that the Mr. Blank was not sent to the hospital until three and a half days later. BOP employees failed to recognize the early signs and symptoms of the abscess and cellulitis, and then they consciously ignored Mr. Blank's repeated attempts to receive treatment.

### d.  Solitary Confinement

56.     On June 12, 2018, Mr. Blank was asked to take Ivermectin, a drug used to combat a scabies epidemic at FMC.  But Ivermectin is not an FDA-approved drug to treat scabies, and Mr. Blank did not have scabies at the time nor had he been in contact with anyone who had it. Further, there was no logical reason why BOP personnel asked him to take the drug. The entire population at FMC was not forced to take it; only certain inmates were required. Because it was not FDA approved, Mr. Blank refused to take the drug.

57.     In response, Mr. Blank was placed in solitary confinement (the "SHU"). While in the SHU, BOP employees punished Mr. Blank by:

- taking away his prescribed medical mattress and pillow;

- denying Mr. Blank his prescribed medicine on multiple occasions; and

- canceling a medically necessary procedure to relieve pain in his neck.

58.     Mr. Blank was kept in the SHU for 13 days for refusing to take Ivermectin. He was only allowed out when he decided to take the medicine because his pain had become so unbearable without his medical mattress or pillow.

## V.     CAUSES OF ACTION

### Count 1 – Eighth Amendment Violation
### Aminia Baruti

59.     The foregoing paragraphs are incorporated by reference as though fully set forth herein.

60.     Mr. Blank brings Count 1 against Baruti in her personal capacity.

61.     Mr. Blank suffered from a serious medical condition while at FMC in that he had severe neck and back issues that caused extreme and chronic pain and suffering. Mr. Blank's neck issues necessitated that he receive a neck fusion surgery.

62.    Baruti was responsible for providing adequate medical care to certain inmates, including Mr. Blank, at FMC. In such role, she was responsible for ensuring that Mr. Blank received adequate treatment, for referring Mr. Blank for consultations to address his pain and injuries, and for prescribing Mr. Blank adequate medications to deal with his ailments.

63.    Baruti knew that Mr. Blank had a serious medical condition that was causing severe side effects in connection with not only his Crohn's disease, but his entire way of life. Baruti had actual knowledge of Mr. Blank's severe and chronic pain because she had prescribed him pain medication for four years. Further, Baruti had written the consult orders that sent Mr. Blank to the neurosurgeon for his severe spinal cord condition.

64.    Despite Baruti's awareness of Mr. Blank's serious medical needs, Baruti was deliberately indifferent to Mr. Blank's serious medical needs. Baruti acted out of spite toward Mr. Blank because he filed a (successful) lawsuit against her. In particular, Baruti:

- refused to prescribe Mr. Blank any pain medication at all, despite previously prescribing Morphine for several years;

- told nurses Mr. Blank did not need to lie down during a painful infusion treatment for Crohn's disease, despite the fact that Baruti herself had ordered that Mr. Blank lie down for the previous six years for these exact treatments;

- refused to schedule a neurosurgeon appointment for over year despite a recommendation by a separate doctor stating Mr. Blank needed to see a neurosurgeon;

- changed Mr. Blank's chronic care appointments from bi-annual to annual, despite the fact that Mr. Blank had complicated medical conditions; this also caused his six-month prescriptions to expire; and

- canceled Mr. Blank's lower bunk pass.

65.    Because of Baruti's conduct, Mr. Blank endured severe and unnecessary chronic pain, constant headaches, severe nausea, dizziness, inability to sleep for more than two hours consecutively, tremors in his right arm, and weakness and numbness in his right arm.

66.    Baruti's conduct constituted deliberate indifference to and reckless disregard of Mr. Blank's serious medical needs, caused him to suffer severe pain and suffering, and exposed him to substantial risks of serious harm, all in violation of his Eighth Amendment rights.

**Count 2 – First Amendment Violation (Retaliation for Filing the First Lawsuit)**
**<u>Aminia Baruti</u>**

67.    The foregoing paragraphs are incorporated by reference as though fully set forth herein.

68.    Mr. Blank brings Count 2 against Baruti in her personal capacity.

69.    Mr. Blank's First Amendment rights include (among other things) the ability to have access to the courts, to file lawsuits and prison grievances, and to exercise his right of free speech. In filing the First Lawsuit, Mr. Blank was properly exercising his First Amendment rights in connection with Baruti violating Mr. Blank's constitutional rights in other matters. Indeed, the First Lawsuit was settled in Mr. Blank's favor.

70.    Baruti, a BOP employee responsible for Mr. Blank's medical care and wellbeing, took adverse actions against him motivated by retaliation for exercising his constitutionally protected First Amendment rights (*i.e.*, filing the First Lawsuit), with the intent to deter and/or punish him for doing so.

71.    Baruti engaged in retaliatory conduct against her patient, Mr. Blank, after she knew he had filed the First Lawsuit. Mr. Blank's filing the First Lawsuit motivated Baruti's retaliatory conduct described herein.

72.     There is no alternative remedy for Baruti's retaliatory actions against Mr. Blank in violation of his First Amendment rights. Mr. Blank exhausted administrative processes. As described herein, Mr. Blank's complaints through administrative processes were ignored and/or dismissed outright by officials. This caused Mr. Blank to have no avenue to remedy Baruti's violations of his rights.

73.     To punish Mr. Blank for filing the First Lawsuit, Baruti engaged in the retaliatory actions described herein, including but not limited to denying Mr. Blank necessary narcotic pain medication for his severe and chronic pain, and filing a frivolous incident report against Mr. Blank that, if found to be credible (it was not), would have prolonged Mr. Blank's prison sentence.

74.     There was a causal connection between the protected conduct and the adverse action.

75.     As a direct and proximate result of these actions, Mr. Blank has suffered damages.

### Count 3 – Request for Declaratory Judgment
### Aminia Baruti

76.     The foregoing paragraphs are incorporated by reference as though fully set forth herein.

77.     Mr. Blank brings this claim for declaratory relief pursuant to Chapter 37 of the Texas Civil Practice and Remedies Code

78.     Article 1, Section 27 of the Texas Constitution states that: "citizens shall have the right, in a peaceable manner, to . . . apply to those invested with the powers of government for redress of grievances or other purposes, by petition, address or remonstrance."

79.     Therefore, Mr. Blank seeks a declaratory judgment, pursuant to the Texas Uniform Declaratory Judgments Act, Chapter 37 of the Texas Civil Practice and Remedies Code, declaring

that Baruti's actions against Mr. Blank following the filing of the First Lawsuit violated Article 1, Section 27 of the Texas Constitution.

### Count 4 – Eighth Amendment Violation
### <u>Charles Eilert</u>

80.     The foregoing paragraphs are incorporated by reference as though fully set forth herein.

81.     Mr. Blank brings Count 4 against Eilert in his personal capacity.

82.     Mr. Blank suffered from a serious medical condition while at FMC in that he had severe neck and back issues that caused extreme pain and suffering. Mr. Blank's neck issues necessitated that he receive a neck fusion surgery.

83.     Eilert was responsible for providing medical care to certain inmates, including Mr. Blank, at FMC. In such role, Eilert was responsible for ensuring that Mr. Blank received appropriate treatment, for referring Mr. Blank for appropriate consultations to address his pain and injuries, and for prescribing Mr. Blank appropriate medications to deal with the pain.

84.     Eilert knew, or reasonably should have known, that Mr. Blank's pain was a serious medical condition that was causing severe side effects in connection with not only his Crohn's disease, but his entire way of life. Eilert should have known this because he had previously prescribed Mr. Blank a strong pain medication throughout a period of three years.

85.     Despite Eilert's awareness of Mr. Blank's severe and chronic pain and major medical conditions, Eilert was deliberately indifferent to Mr. Blank's serious medical needs. As described herein, Eilert refused to prescribe adequate pain medication or to ensure Mr. Blank was able to see a neurosurgeon, and thereby obtain crucial spinal surgery, in a reasonable timely matter.

86.     Eilert's conduct caused Mr. Blank to suffer prolonged and unnecessary periods of excruciating pain.

87.    Eilert's conduct constituted deliberate indifference to and reckless disregard of Mr. Blank's serious medical needs, caused him to suffer severe and prolonged pain and suffering, and exposed him to substantial risk of serious harm, all in violation of his Eighth Amendment rights.

## Count 5 – FTCA Negligence
## United States

88.    The foregoing paragraphs are incorporated by reference as though fully set forth herein.

89.    BOP employees acted within the scope of their office or employment under circumstances where the United States, if it were a private person, would be liable to Mr. Blank in accordance with the laws of the State of Texas.

90.    By allowing BOP employees to neglect Mr. Blank's medical needs as his primary physician, the United States breached its duty of care under Texas state law. This included punishing Mr. Blank for illogical reasons and placing him in solitary confinement. While there, he was without his prescribed medicines on multiple occasions and denied his medical mattress and pillow. This breach caused Mr. Blank to suffer significant and unnecessary pain for a prolonged period of time.

91.    The United States allowed the conduct alleged above to occur, continue, and/or remain untreated despite the fact that it was readily evident that BOP employees were taking actions directly against the well-being of Mr. Blank. Such conduct breached the United States' duty of care under Texas state law, causing Mr. Blank to suffer significant and unnecessary pain and infection.

92.    Thus, the United States was negligent and acted with such indifference as to constitute an utter disregard of prudence amounting to a complete neglect of Mr. Blank's well-being.

93.     The United States is liable to Mr. Blank for the above-mentioned injuries and damages.

### Count 6 – FTCA Gross Negligence
### United States

94.     The foregoing paragraphs are incorporated by reference as though fully set forth herein.

95.     BOP employees acted within the scope of their office or employment under circumstances where the United States, if it were a private person, would be liable to Mr. Blank in accordance with the laws of the State of Texas.

96.     Under Texas law, gross negligence involves two components: (1) viewed objectively from the actor's standpoint, the act or omission complained of must involve an extreme degree of risk, considering the probability and magnitude of the potential harm to others; and (2) the actor must have actual, subjective awareness of the risk involved, but nevertheless proceed in conscious indifference to the rights, safety, or welfare of others.

97.     BOP employees' actions involving Mr. Blank involved an extreme degree of risk. BOP employees' were aware that Mr. Blank had severe injuries to his neck and back. BOP employees had prescribed Mr. Blank with pain medication to treat these injuries for four years previously. BOP employees also punished Mr. Blank for illogical reasons and placed him in solitary confinement. While there, he was without his prescribed medicines on multiple occasions and denied his medical mattress and pillow.

98.     BOP employees were fully aware that Mr. Blank's injuries were not getting better and were actually deteriorating. Despite this, BOP employees stopped prescribing pain medication to Mr. Blank out of spite and a dereliction of duty. Further, BOP employees withheld Mr. Blank's

prescribed medicine to punish him, failed to recognize—despite repeated complaints by Mr. Blank—an abscess and cellulitis, and revoked his medically prescribed mattress.

99.    Through their grossly negligent actions, BOP employees violated their duty to provide Mr. Blank with adequate medical attention, which caused Mr. Blank to suffer severe, chronic, and unnecessary pain, as well as constant headaches, severe nausea, dizziness, inability to sleep for more than two hours consecutively, tremors in his right arm, and weakness and numbness in his right arm.

100.    Mr. Blank's pain was caused by the grossly negligent or wrongful acts or omissions of BOP employees.

### Count 7 – FTCA IIED
### United States

101.    BOP employees acted within the scope of their office or employment under circumstances where the United States, if it were a private person, would be liable to Plaintiff in accordance with the laws of the State of Texas.

102.    Under Texas law, intentional infliction of emotional distress exists where (1) a defendant acts intentionally or recklessly, (2) the conduct was extreme and outrageous, (3) a defendant's actions caused the emotional distress, and (4) the emotional distress plaintiff suffered was extreme.

103.    BOP employees knowingly, intentionally, and/or recklessly caused Mr. Blank severe emotional distress by withholding necessary medications to punish Mr. Blank for bringing a lawsuit against them.

104.    BOP employees' conduct was extreme and outrageous.

105.    BOP employees' knowing and/or reckless conduct caused Mr. Blank to suffer extreme emotional distress for an extended period of time. The harm suffered by Mr. Blank due to BOP employees' actions was severe and exasperated his already declining health condition.

106.    BOP employees' actions constitute intentional infliction of emotional distress under Texas law.

## VI.    JURY DEMAND

107.    Plaintiff Travis Blank hereby demands a trial by jury of the above-styled action for all claims for which a jury is available.

## VII.    PRAYER FOR RELIEF

WHEREFORE, Mr. Blank hereby requests that Defendants be cited to appear and answer this First Amended Complaint, and that upon final trial and determination thereof, judgment be entered in favor of Mr. Blank awarding him the following relief:

    A.  Compensatory damages for Mr. Blank's pain and suffering, in an amount to be determined at trial;

    B.  Nominal damages;

    C.  A declaratory judgment as requested in paragraph 79;

    D.  Punitive damages (with respect to *Bivens* claims against Baruti and Eilert);

    E.  Reasonable attorneys' fees and court costs;

    F.  Pre-judgment and post-judgment interest to the maximum extent permitted by law; and

    G.  Such other and further relief to which Mr. Blank may be entitled.

Date:  October 30, 2020.                    Respectfully submitted,

**THOMPSON & KNIGHT LLP**

By:  */s/ Michael W. Stockham*
  Michael W. Stockham
  State Bar No. 24038074
  Michael.stockham@tklaw.com
  Elissa M. McClure
  TX State Bar No. 24094828
  Elissa.McClure@tklaw.com
  Javan T.M. Porter
  State Bar No. 24116912
  Javan.porter@tklaw.com

  1722 Routh Street, Suite 1500
  Dallas, Texas  75201
  (214) 969-1700 (Telephone)
  (214) 969-1751 (Facsimile)

*ATTORNEYS FOR PLAINTIFF TRAVIS BLANK*

## CERTIFICATE OF SERVICE

I hereby certify that on October 30, 2020, a copy of the foregoing document was served by electronic transmission on all counsel of record via the Court's ECF system.

  */s/ Michael W. Stockham*
  Michael W. Stockham