

IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION



TRAVIS BLANK,                    §
                                 §
          Plaintiff,             §
                                 §
VS.                              §    NO. 4:20-CV-096-A
                                 §
UNITED STATES OF AMERICA,        §
ET AL.,                          §
                                 §
          Defendants.            §

MEMORANDUM OPINION AND ORDER

· Came on for consideration the motion of defendants Aminia Baruti ("Baruti") and Charles Eilert ("Eilert") for summary judgment and the motion of United States for partial summary judgment. The court, having considered the motions, the response of plaintiff, Travis Blank, the record, and applicable authorities, finds that the motion of Baruti and Eilert should be granted and that the motion of United States should be granted in part.

I.

Background

The operative pleading is plaintiff's third amended complaint filed June 16, 2021. Doc.[1] 89. In it, plaintiff asserts claims against United States under the Federal Tort Claims Act, 28 U.S.C. §§ 1346(b), 2671-80 ("FTCA"), and claims against

---

[1] The "Doc. __" reference is to the number of the item on the docket in this action.

Baruti and Eilert under <u>Bivens v. Six Unknown Named Agents of
the Federal Bureau of Narcotics</u>, 403 U.S. 288 (1971). The court
has dismissed plaintiff's claims for declaratory judgment, for
retaliation under the First Amendment, and for intentional
infliction of emotional distress. Doc. 79.

Plaintiff, a former inmate of the Federal Medical Center
Fort Worth ("FMC"), has filed numerous lawsuits while
incarcerated.[2] This lawsuit concerns his treatment from 2017 to
2019. His complaints focus on untreated neck and back pain, an
untreated infection, being placed in solitary confinement for
refusing to take a certain medication, and delay in surgery.
Doc. 89.

II.

### Grounds of the Motions

Baruti and Eilert, doctors who treated plaintiff, assert
that they are each entitled to qualified immunity and that the
claims against them must be dismissed.[3] Doc. 93. United States
seeks judgment that plaintiff take nothing on his claims for
which he cannot provide expert testimony and on claims that
accrued more than two years before he submitted his

---

[2] <u>See</u> Nos. 3:11-CV-1327-K, 4:12-CV-052-A, 4:14-CV-502-O, 4:15-CV-098-O, 4:16-CV-056-A, 4:16-CV-465-O, 4:17-CV-609-A, and 4:19-CV-577-O, all filed in this district.

[3] Baruti and Eilert also contend that at least some of plaintiff's claims against them are barred by limitations. The court need not reach this ground of their motion. (Oddly, Baruti does not allege that claims against her accruing on or before October 30, 2018, are barred by <u>res judicata</u>. <u>See</u> No. 4:17-CV-609-A, Doc. 117.)

administrative claim under the FTCA or that were not included in his administrative claim. Doc. 95.

III.

## Applicable Summary Judgment Principles

Rule 56(a) of the Federal Rules of Civil Procedure provides that the court shall grant summary judgment on a claim or defense if there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247 (1986). The movant bears the initial burden of pointing out to the court that there is no genuine dispute as to any material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323, 325 (1986). The movant can discharge this burden by pointing out the absence of evidence supporting one or more essential elements of the nonmoving party's claim, "since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Id. at 323.

Once the movant has carried its burden under Rule 56(a), the nonmoving party must identify evidence in the record that creates a genuine dispute as to each of the challenged elements of its case. Id. at 324; see also Fed. R. Civ. P. 56(c) ("A party asserting that a fact . . . is genuinely disputed must support the assertion by . . . citing to particular parts of materials

3

in the record . . . ."). If the evidence identified could not
lead a rational trier of fact to find in favor of the nonmoving
party as to each essential element of the nonmoving party's
case, there is no genuine dispute for trial and summary judgment
is appropriate. Matsushita Elec. Indus. Co. v. Zenith Radio
Corp., 475 U.S. 574, 587, 597 (1986). In Mississippi Prot. &
Advocacy Sys., Inc. v. Cotten, the Fifth Circuit explained:

> Where the record, including affidavits,
> interrogatories, admissions, and depositions could
> not, as a whole, lead a rational trier of fact to find
> for the nonmoving party, there is no issue for trial.

929 F.2d 1054, 1058 (5th Cir. 1991).

The standard for granting a motion for summary judgment is
the same as the standard for rendering judgment as a matter of
law.[4] Celotex Corp., 477 U.S. at 323. If the record taken as a
whole could not lead a rational trier of fact to find for the
non-moving party, there is no genuine issue for trial.
Matsushita, 475 U.S. at 597; see also Mississippi Prot. &
Advocacy Sys., 929 F.2d at 1058.

The mere existence of some alleged factual dispute between
the parties will not defeat an otherwise properly supported

---

[4]In Boeing Co. v. Shipman, 411 F.2d 365, 374-75 (5th Cir. 1969)
(en banc), the Fifth Circuit explained the standard to be applied in
determining whether the court should enter judgment on motions for
directed verdict or for judgment notwithstanding the verdict.

4

motion for summary judgment. Anderson, 477 U.S. at 247-48. Moreover, "[w]hen opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." Scott v. Harris, 550 U.S. 372, 380 (2007).

Although the court must resolve all factual inferences in favor of the nonmovant, the nonmovant cannot manufacture a disputed material fact where none exists. Albertson v. T.J. Stevenson & Co., 749 F.2d 223, 228 (5th Cir. 1984). He cannot defeat a motion for summary judgment by submitting an affidavit or declaration that contradicts, without explanation, his earlier sworn deposition. Cleveland v. Policy Mgmt. Sys. Corp., 526 U.S. 795, 806 (1999); S.W.S. Erectors, Inc. v. Infax, Inc., 72 F.3d 489, 495 (5th Cir. 1996); Albertson, 749 F.2d at 228. Nor can he rely on conclusory allegations unsupported by concrete and particular facts. Duffy v. Leading Edge Prods., Inc., 44 F.3d 308, 312 (5th Cir. 1995).

IV.

Undisputed Facts

The record establishes the following undisputed facts:

Plaintiff arrived at FMC in February 2012. Doc. 99 at 053. He suffered from a number of preexisting conditions including

5

Crohns' Disease that was not well-managed, id. at 064-66, and neck pain and spine issues that had previously required a C3-C4 anterior cervical discectomy and fusion. Id. at 195-97. Beginning in September 2012, plaintiff was prescribed opioid pain medications of varying types and dosages for chronic neck pain. See, e.g., id. at 067-68. By July 2014, he was taking 60 mg daily morphine sulfate sustained release. Id. at 069.

In August 2016, plaintiff was diagnosed by a gastroenterologist with opiate induced constipation. Doc. 99 at 072. He told an outside provider that he did not want to take narcotics. Id. at 071. Plaintiff was told to drink more fluids and eat more fiber and was prescribed numerous medications to alleviate the constipation. Id. at 072-75. In December 2016, plaintiff agreed to a plan to be weened off morphine. Id. at 078, 085, 091, 092; Doc. 109 at 051.

On April 24, 2017, plaintiff told Baruti that he was still experiencing constipation and was in pain. She noted that he used topical lidocaine and had been approved for Flexeril to help with pain. Doc. 99 at 082. On April 26, plaintiff again saw Baruti and she prescribed new pain medications. Id. at 087-88. Plaintiff had an MRI in July 2017, which was relatively unremarkable according to an outside orthopedic specialist. Id. at 120. On September 18, 2017, Baruti referred plaintiff to a

gastroenterologist for follow-up regarding constipation and pain. Id. at 132. On September 27, 2017, Baruti noted that plaintiff was already scheduled for physical therapy and that she would refer him to psychology to evaluate other modalities to effectively minimize his chronic pain. Id. at 097. She also referred him to pain management. Id. at 096. On October 23, 2017, Baruti examined plaintiff and, noting his various complaints, referred him to neurosurgery.[5] Id. at 093, 095.[6] Plaintiff refused the psychology consultation. Id. at 098.

In January 2018, plaintiff was seen by a neurologist who recommended an increase in Flexeril and follow-up with neurosurgery following an MRI. Doc. 109 at 134-35. On February 15, 2018, plaintiff was seen by an outside pain specialist and reported that his symptoms were moderate and that his morphine had been discontinued due to interference with his Crohn's Disease. Id. at 118. In March, Baruti requested a new pain management consultation for cervical injections, noting that

---

[5] The reply and appendix in support thereof filed by defendants reflect that, beginning in December 2017, FMC tried to obtain an appointment for plaintiff with the neurosurgery clinic. Doc. 115 at 024. After repeated requests, the clinic asked for a current MRI of the spine. Id. at 022-24. On January 24, 2018, the radiology report was sent. Id. at 019. The MRI was unremarkable. Doc. 99 at 109. A doctor at the neurosurgery clinic reviewed it and said that plaintiff needed to be referred to pain management as he was "non operative and just needs pain management." Doc. 115 at 014-15. Baruti was asked to cancel the consultation but refused unless she could get something in writing confirming that plaintiff was not a surgical candidate. Id. at 010, 014. The court recognizes that plaintiff contends that the evidence submitted with the reply should not be considered. Doc. 117. The court need not and does not rely on this evidence in finding that the motion of Baruti and Eilert should be granted. The court simply includes this as a reasonable explanation for why the medical records appear as they do.
[6] The remaining pages of this encounter are found in Doc. 109 at 071-74, 076.

plaintiff was awaiting a neurosurgery consultation.[7] Doc. 109 at 065. On August 13, 2018, plaintiff received the injections. Doc. 99 at 105. On September 14, 2018, plaintiff had an MRI that indicated that his neck condition had worsened. Id. at 136-37. He was scheduled to see neurosurgery on October 11, 2018. Id. at 138. On October 24, 2018, Eilert referred plaintiff for a neurology consult. Id. at 123. On December 14, 2018, plaintiff again complained of pain and was prescribed additional medication. Id. at 090, 100. On January 22, 2019, the neurosurgeon recommended removal of C3-C4 cervical hardware and C4-C5 ACDF.[8] Id. at 139. At a sick call encounter on February 8, 2019, plaintiff inquired whether he would be able to have the recommended surgery before being released from incarceration in July 2019. Id. at 108. On March 6, 2019, the pain management provider noted that plaintiff had obtained 80% relief for 2 months following the injections in August 2018 but pain had returned. Id. at 107. On March 19, 2019, plaintiff was seen again by an outside neurologist, who noted that surgery was planned and that there was no new diagnosis. Id. at 127. On May 1, 2019, plaintiff had surgery to remove the hardware as

---

[7] Plaintiff had complained that his pain management specialist recommended a different type of injection for his neck. He also complained that he had been denied pain medication. Baruti disputed that she had denied him pain medication. Rather, she understood that he did not want to take narcotics. Doc. 109 at 064.
[8] The neurosurgeon's report notes all of the treatments tried. Doc. 99 at 106.

recommended. Id. at 134.

Plaintiff was released from incarceration in July 2019. He is not suffering any neck issues, pain, or symptoms and his Crohn's Disease is well managed. Doc. 99 at 198. He is not taking any narcotic pain medication. Id. at 199.

V.

Analysis

A.   Bivens Claims

Federal officials are entitled to qualified immunity unless they violate a statutory or constitutional right that was clearly established at the time of the challenged conduct. Doe v. Robertson, 751 F.3d 383, 387 (5th Cir. 2014). The doctrine protects those whose actions could reasonably have been believed to be legal and "all but the plainly incompetent or those who knowingly violate the law." Malley v. Briggs, 475 U.S. 335, 341 (1986). Evaluating qualified immunity is a two-step process: First, the court considers whether the official's alleged conduct violated a federal right. Robertson, 751 F.3d at 387. Second, the court considers whether the right in question was clearly established at the time of the violation, such that the official was on notice of the unlawfulness of his or her conduct. Alexander v. City of Round Rock, 854 F.3d 298, 303 (5th Cir. 2017). The court has the discretion to determine which

9

prong of the test to address first. Morgan v. Swanson, 659 F.3d
359, 371 (5th Cir. 2011)(en banc). The burden is on the
plaintiff to rebut the defense by establishing a genuine fact
issue as to whether the official's conduct violated clearly
established law. Brown v. Callahan, 623 F.3d 223, 253 (5th Cir.
2010).

    Here, plaintiff alleges that Baruti and Eilert violated
clearly established law by acting with deliberate indifference
to his medical needs. The Eighth Amendment's proscription of
cruel and unusual punishments obligates the government to
provide medical care for those whom it is punishing by
incarceration. Estelle v. Gamble, 429 U.S. 97, 103 (1976).
Whether Baruti and Eilert violated the Eighth Amendment also
involves a two-step inquiry. First, plaintiff must show that he
was exposed to "a substantial risk of serious harm." Spikes v.
McVea, ___ F.3d ___, 2021 WL 3525026, at *4 (5th Cir. Aug. 11,
2021)(quoting Gobert v. Caldwell, 463 F.3d 339, 345 (5th Cir.
2006)). Second, he must show that "prison officials acted or
failed to act with deliberate indifference to that risk." Id.
(quoting Gobert, 463 F.3d at 345-46). This is a test of
subjective recklessness, i.e., a prison official acts with
deliberate indifference only if he knows that the inmate faces a
substantial risk of serious bodily harm and he disregards that

risk by failing to take reasonable measures to abate it. Farmer
v. Brennan, 511 U.S. 825, 839-40 (1994); Gobert, 463 F.3d at
346.

> Unsuccessful medical treatment, acts of negligence, or
> medical malpractice do not constitute deliberate
> indifference, nor does a prisoner's disagreement with
> his medical treatment, absent exceptional
> circumstances. Furthermore, the decision whether to
> provide additional treatment is a classic example of a
> matter for medical judgment. A showing of deliberate
> indifference requires the prisoner to submit evidence
> that prison officials refused to treat him, ignored
> his complaints, intentionally treated him incorrectly,
> or engaged in any similar conduct that would clearly
> evince a wanton disregard for any serious medical
> needs.

Gobert, 463 F.3d at 346 (internal quotations and citations
omitted). For example, wanton disregard may be evidenced by a
doctor's decision to administer easier and less efficacious
treatment without exercising medical judgment or by delaying
treatment for non-medical reasons. Estelle, 429 U.S. at 104 &
n.10.

The burden is on plaintiff to overcome the qualified
immunity defense. Brown, 623 F.3d at 253. But plaintiff makes no
response to Eilert's contention that he is entitled to qualified
immunity. Doc. 108. He does not point to any summary judgment
evidence to raise a genuine fact issue as to Eilert's care or
lack thereof. In fact, the court cannot discern any evidence to
support the allegation that Eilert was deliberately indifferent

11

to plaintiff's serious medical needs. Accordingly, Eilert is entitled to judgment that plaintiff take nothing on his claims against Eilert.

As for Baruti, plaintiff relies on little but his own conclusory statements. Doc. 109 at 148-50, ¶¶ 2-9. The medical records that have been provided reflect that, whether she personally saw plaintiff or not,[9] Baruti reviewed his ongoing treatment by other providers. See, e.g., Doc. 99 at 079, 082-83, 089, 087-88, 132, 097, 096, 093, 095, 098, 111, 117, 143, 106, 139; Doc. 109 at 045, 057-59, 069, 135, 065, 064, 142, 130-31, 133, 113.[10] She prescribed medications and other treatments and referred plaintiff to specialists to try to control his pain. See, e.g., Doc. 99 at 099, 101, 102, 097, 096, 095, 100, 106 (summarizing treatments tried). As plaintiff admits, the medical records do not reflect that Baruti refused to treat him. Id. at 194. Plaintiff's expert testified that he was unable to find any evidence of intentional harm or staff refusing to treat plaintiff. Id. at 019-022. The expert further noted that plaintiff frequently had disagreements about the course of his medical care. Id. at 022, 098 (refusing a psychology

---

[9] See Gobert, 463 F.3d at 350 n.35 (continued personal treatment by a treating physician is not constitutionally required).

[10] The pages are cited in chronological order. The court had to create its own sequence of medical records because the parties did not bother to put them in order. The court further notes that the randomness and incompleteness of the records appears to have led the parties to misrepresent facts allegedly contained in the medical records.

consultation for pain management), 108 (stopped taking pain medication due to weight gain), 092 (refused to explain why he was not taking prescribed medication). The contention that Baruti cut off plaintiff's morphine then refused to treat him is belied by the record. Id. at 071, 075, 070, 085, 132, 091, 093; Doc. 109 at 044, 051, 060; Doc. 115 at 007-26. She tried a number of modalities that were not successful, but ultimately the surgery was. In sum, the record reflects a disagreement about recommended medical treatment and not deliberate indifference. See, e.g., Petzold v. Rostollan, 946 F.3d 242 (5th Cir. 2019).

Further, plaintiff has not come forward with any case sufficient to establish that a doctor acting under circumstances like those of this case was held to have violated the Constitution. Cope v. Cogdill, 3 F.4th 198, 205 (5th Cir. 2021). Broad general propositions are not enough to overcome qualified immunity. Id. Rather, plaintiff must show that the violative nature of the particular conduct is clearly established. Mullenix v. Luna, 577 U.S. 7, 12 (2015). Plaintiff must show that the law so clearly and unambiguously prohibited Baruti's conduct that every reasonable officer would understand that what she was doing violated the law. Wyatt v. Fletcher, 718 F.3d 496, 503 (5th Cir. 2013). His reference to Easter v. Powell, 467 F.3d

13

459 (5th Cir. 2006), is plainly insufficient. In Easter, a
prison doctor prescribed nitroglycerin for an inmate with a
documented history of serious heart problems. A nurse refused to
provide the nitroglycerin when the inmate presented with chest
pain. By the time another medical professional gave the inmate
the nitroglycerin, four hours later, the blood vessels in his
left eye had burst, causing it to fill with blood. This is not a
case where Baruti refused to follow a prescribed course of
treatment. Rather, the pertinent issues include whether Baruti
was required to prescribe opioids as plaintiff demanded, whether
she could rely on the recommendations of specialists to whom she
referred plaintiff, and whether she can be held liable for the
delays caused by others in obtaining medical care for plaintiff.
Without a case addressing similar facts or circumstances,
plaintiff cannot show that Baruti's conduct clearly amount to
deliberate indifference that violated the Constitution.

B.    Tort Claims

       United States says that it should be granted judgment on
plaintiff's claims concerning (1) treatment of an infection in
May 2017, Doc. 89 at ¶¶ 53-58, (2) placement of plaintiff in
medical isolation after he was identified as a close contact of
a scabies outbreak and refused to take the prescribed treatment,
id. ¶¶ 59-61, 80, 87, and (3) negligent delay in a neurosurgery

14

appointment that delayed surgery, id. ¶¶ 35-37. United States also says that any claim that was not timely presented or exhausted should be dismissed. Doc. 96 at 7-8.

Plaintiff recognizes that tort claims must be presented to the appropriate agency within two years of accrual. Trinity Marine Prods., Inc. v. United States, 812 F.3d 481, 487 (5th Cir. 2016). The court does not interpret plaintiff's third amended complaint to be alleging any claims based on conduct that occurred before January 17, 2017, two years prior to receipt by the government of his administrative claim.

United States argues that plaintiff cannot pursue claims based on facts that occurred after he filed his administrative claim. Izen v. Catalina, 398 F.3d 363, 367 (5th Cir. 2005); McAfee v. Fifth Circuit Judges, 884 F.2d 222-23 (5th Cir. 1989). The statutory purpose of requiring an administrative claim is to give the government an opportunity to expedite fair settlement of claims and avoid unnecessary court congestion. Rise v. United States, 630 F.2d 1068, 1071 (5th Cir. 1980). The claimant must provide facts sufficient to allow his claim to be investigated. Cook v. United States, 978 F.2d 164, 166 (5th Cir. 1992). Here, plaintiff included as a basis for his tort claim "delayed access to hospital and other doctors." Doc. 109 at 077. In his detailed account of his injury, plaintiff recited that on March 2, 2018,

he was told to wait for his neurosurgeon appointment that had been approved, but he was still waiting, more than nine months later, at the time he filed his claim. Id. at 094-095. Plaintiff gave notice of sufficient facts to enable the government to investigate his delay of surgery claim.[11] He did not give, nor could he have given, notice, however, of alleged harm occurring as a result of Eilert's failure to give him pain medication following surgery on May 1, 2019. That claim is unexhausted and cannot be pursued here.

As for the substance of plaintiff's claims, United States argues that plaintiff cannot proceed with the three enumerated claims because he lacks expert testimony to establish them. Under the FTCA, federal courts apply the law of the state where the alleged negligence occurred. Richards v. United States, 369 U.S. 1, 10 (1962). Under Texas law, treating physicians owe a duty to exercise that degree of care which a general practitioner of ordinary prudence and skill, practicing in the community or similar community, would have exercised in the same or similar circumstances. Edwards v. United States, 519 F.2d 1137, 1139 (5th Cir. 1975). The plaintiff bears the burden of proving (1) the physician's duty to act according to an

---

[11] One could reasonably conclude that investigation of this claim resulted in plaintiff having surgery before his release from incarceration.

16

applicable standard of care, (2) a breach of that standard of
care, (3) injury, and (4) causation. Hannah v. United States,
523 F.3d 597, 601 (5th Cir. 2008). Standard of care is the
threshold issue and must be established by expert testimony
unless the mode or form of treatment is a matter of common
knowledge or is within the experience of a lay person. Id., 523
F.3d at 601-02; Quijano v. United States, 325 F.3d 564, 567 (5th
Cir. 2003). Expert testimony is also required to establish that
the breach proximately caused the harm suffered by the
plaintiff. Guile v. United States, 422 F.3d 221, 225 (5th Cir.
2005); Garza v. Levin, 769 S.W.2d 644, 646 (Tex. App.--Corpus
Christi 1989, writ denied).

Plaintiff apparently recognizes that he cannot prevail on
the claim arising out of the treatment of his infection in May
of 2017, as he makes no response to that argument. As for the
second claim, plaintiff says that his placement in isolation for
declining to take medication is not a medical malpractice claim
requiring expert testimony. The first part of the claim—being
placed in isolation for declining to take medication—was
punishment unrelated to medical treatment. And, the second part
of his claim—denying him medication, use of his prescribed
medical mattress and pillow, and canceling a scheduled

appointment—is within the ordinary experience of laymen and does not require expert testimony. Doc. 108 at 27-28.

As for the first part of the isolation claim, plaintiff denies having had contact with someone who had scabies. He does not dispute, however, that prison authorities believed he had been in contact with such a person. As a result, plaintiff was ordered to take Ivermectin, which he refused to do. He was ordered to be isolated so that he would not infect other prisoners. He has not raised a genuine fact issue as to whether the determination that he had been exposed was negligent. In any event, plaintiff's medical classification and designation fall within the discretionary function exception to the FTCA. Blank v. United States, 713 F. App'x 400, 401 (5th Cir. 2018). Being placed in isolation is not a claim that can be pursued.

As for the second part of the isolation claim, the court agrees that plaintiff does not require expert testimony to establish that he suffered harm when he was denied prescribed medications and his medical mattress and pillow and a medical appointment was cancelled simply because he was placed in isolation. A lay person would know that medications are prescribed and appointments are made for a reason. See Coleman v. United States, 912 F.3d 824, 829 (5th Cir. 2019).

Accordingly, plaintiff should be allowed to proceed with this claim.

As for the third claim, plaintiff says that there is expert testimony to establish the standard of care and causation. Doc. 108 at 28-29. However, the evidence he cites does not support this contention. Although defendants' own expert testified that a delay of fifteen months in seeing a neurosurgeon would not be an acceptable practice for him, he did not opine about the standard in a prison setting. Doc. 109 at 036. More importantly, there is no expert testimony to establish causation of harm, which would clearly be required here. Therefore, plaintiff cannot proceed with his claim that he suffered harm as a result of the delay in receiving surgery.

VI.

Order

For the reasons discussed herein,

The court ORDERS that the motion of Baruti and Eilert for summary judgment be, and is hereby, granted; that plaintiff take nothing on his claims against them; and, that such claims be, and are hereby, dismissed with prejudice.

The court further ORDERS that United States' motion for partial summary judgment be, and is hereby, granted in part, and plaintiff's claims for being placed in isolation, for harm

19

arising out of Eilert's alleged failure to provide pain medication following surgery on May 1, 2019, and for harm arising out of the delay in his surgery be, and are hereby, dismissed. The only claims remaining to be tried as to United States are for (1) medical malpractice concerning alleged inadequate opioid medications for plaintiff's chronic pain, as alleged in his third amended complaint, Doc. 96, ¶¶ 87 & 88, and (2) injury, if any, suffered by plaintiff as a result of being denied his medical mattress, pillow, and medications, and the cancellation of an appointment while he was in isolation. Id. ¶¶ 60, 80, 87.

The court determines that there is not just reason for delay in, and hereby directs, entry of final judgment as to the dismissal of the claims against Baruti and Eilert.

SIGNED September 3, 2021.

JOHN McBRYDE
Senior United States District Judge